# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **K.G.-1 and K.G.-2**

**No. 19-1113** (Randolph County 19-JA-41 and 19-JA-42)

**FILED**

**June 25, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother K.G.-3, by counsel J. Brent Easton, appeals the Circuit Court of Randolph County's October 28, 2019, order denying her request for an improvement period and terminating her parental rights to K.G.-1 and K.G.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Heather M. Weese, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in (1) denying her request for an improvement period, (2) terminating her parental rights without imposing a less-restrictive dispositional alternative, and (3) considering the wishes of K.G.-1 and K.G.-2 in reaching disposition.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2019, the DHHR filed a child abuse and neglect petition against petitioner and the father alleging a history of substance abuse and domestic violence. Additionally, the petition alleged that petitioner was incarcerated at the time of the petition and left the children with no

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because the children and petitioner share the same initials, we will refer to them as K.G.-1, K.G.-2, and K.G.-3, respectively, throughout this memorandum decision.

1

caregiver. Thereafter, petitioner was released from incarceration and waived her preliminary hearing. In June of 2019, the DHHR filed an amended petition after forensic interviews with the children. The amended petition alleged that the children disclosed incidents of domestic violence and drug abuse in the home as well as a lack of supervision, including at least one occasion when petitioner and the father left the children, then ages four and eleven, unsupervised for several days. Further, the amended petition alleged that the children had not asked to see their parents during interviews, that the older child entered foster care very adept at providing for the younger child's needs, and that the older child may have acted as the primary caregiver for the younger child prior to their removal.

The circuit court held an adjudicatory hearing in June of 2019 wherein petitioner stipulated to abusing and neglecting the children. Petitioner moved for a post-adjudicatory improvement period, which the circuit court deferred ruling upon. The circuit court ordered petitioner to submit to a parental fitness evaluation and drug screens.

In August of 2019, petitioner appeared for her parental fitness evaluation. According to the evaluation, petitioner acknowledged her history of substance abuse, but was "not at all" interested in treatment. Additionally, the report indicated that petitioner took little to no responsibility for abusing and neglecting the children and provided a "guarded" prognosis for petitioner's improvement, noting she had "not demonstrated long term success" in maintaining sobriety. Finally, the evaluation stated that petitioner had a "marginal parental capacity to care, protect[,] and change in order to provide adequately for her children."

The circuit court held a final dispositional hearing in October of 2019 where it considered petitioner's motion for an improvement period and the DHHR's motion to terminate petitioner's parental rights. During the hearing, petitioner indicated that she would comply with the terms and conditions of an improvement period. However, petitioner admitted that she failed to participate in some random drug screens and repeatedly tested positive for controlled substances when she did submit to screens. At the time of the hearing, petitioner was incarcerated, and petitioner's parole officer testified that petitioner failed to consistently check-in or screen with her prior to incarceration. Further, a DHHR caseworker testified that the children did not appear to have a bond with petitioner, neither child requested contact with her, and K.G.-1 repeatedly stated that she did not want to return to petitioner's care and instead wanted adopted by her foster parents. As a result of the testimony and evidence presented, the circuit court denied petitioner's motion for an improvement period. The circuit court considered petitioner's substance abuse, lack of participation in drug screens, lack of bond with the children, and danger of reincarceration due to her continued parole violations. Ultimately, the circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interest of the children to terminate petitioner's parental rights. Accordingly, the court terminated petitioner's parental rights by its October 28, 2019, order.[2] It is from this dispositional order that petitioner appeals.

---

[2]The children's father's parental rights were also terminated. The permanency plan is for the children to be adopted by their current foster family.

2

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges that the circuit court erred in denying her motion for a post-adjudicatory improvement period because she sought to improve her substance abuse problem through treatment. Petitioner also argues that she acknowledged she has a substance abuse problem throughout the proceedings and indicated that she would participate in services. In light of this, she argues that the circuit court should have granted her a post-adjudicatory improvement period. We disagree.

Notably, petitioner does not dispute that she tested positive for methamphetamine and alcohol on multiple drug screens or that she failed to participate in other screens altogether. Indeed, petitioner readily acknowledges she was "less than compliant with drug screening during the pendency of the case." Instead, petitioner argues that "she acknowledged having a drug problem," and indicated her intention to fully participate in the improvement period. While it may be true that petitioner has previously acknowledged struggling with substance abuse, she has at other times flatly denied such abuse, even when confronted with positive drug screens and other evidence. Despite this evidence, petitioner asserts that she "deserved at least a chance to prove herself."

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

Petitioner disputes the circuit court's finding that she was unlikely to fully participate in an improvement period because the parental fitness evaluation found that petitioner "appear[ed] to have the knowledge to parent adequately" and recommended petitioner be given visitation,

therapy, and substance abuse treatment as part of an improvement period. Yet, the circuit court found that petitioner was unlikely to fully participate in an improvement period, in large part, because she failed to participate in all of her ordered drug screens and tested positive when she did participate. The circuit court also found that petitioner was facing a risk of further incarceration due to her positive drug screens and missed check-ins with her parole officer. In fact, at the time of the dispositional hearing, petitioner was serving a period of incarceration due to probation violations. While petitioner argues that she was on the cusp of release and would have been able to start an improvement period "within just two weeks" of the dispositional hearing, this was entirely speculative in nature. While petitioner contends that nothing precluded the circuit court from granting her an improvement period in this case, there is no evidence she would comply with an improvement period. Accordingly, we find no error in the circuit court's denial of her motion.

Next, petitioner alleges the circuit court should have imposed a less-restrictive dispositional alternative pursuant to West Virginia Code § 49-4-604(b)(5) (2019).[3] However, the same evidence set forth above supports the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) (2019) permits a circuit court to terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. With these parameters in mind, it is clear that the record supports the circuit court's finding that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect, given her untreated substance abuse issues. While it is true that petitioner may be able to undergo some treatment in the future for her substance abuse, such possible improvement was based on pure speculation. Indeed, petitioner denied a substance abuse problem on several occasions. Further, petitioner often failed to avail herself of the DHHR's services, missing several drug screens and testing positive when she did submit to screening. While petitioner also takes issue with the timeframe from adjudication to termination, arguing that she should have been given additional time and an opportunity to demonstrate that she could correct the conditions of abuse and neglect, we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (citation omitted). Further, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the termination of petitioner's parental rights.

---

[3]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

Finally, petitioner argues that the circuit court should not have considered the children's wishes when determining disposition because of their ages. West Virginia Code § 49-4-604(b)(6)(C) (2019) provides, in relevant part, that the circuit court shall consider:

> "*Other factors as the court considers necessary and proper*. Notwithstanding any other provision of this article, the court shall give consideration to the wishes of a child 14 years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights."

(emphasis added). While petitioner is correct that both children were under the age contemplated by the statute, the circuit court was not prohibited from considering evidence regarding the children's preferences about further contact with petitioner. The record shows that the guardian indicated that K.G.-1—who disclosed a chronic history of abuse and neglect, including drug abuse, domestic violence, and lengthy periods of no supervision—refused any contact with petitioner after she was removed from her custody. Additionally, the guardian indicated that K.G.-2 was indifferent regarding future contact with petitioner. The circuit court considered this when it found that reuniting the children with petitioner would not be in the children's best interests. The statute provides that the circuit court may consider "other factors as the court may consider necessary and proper," and this evidence was clearly relevant. Here, where one child expressed deep discomfort about reuniting with petitioner and the other expressed ambivalence, the circuit court could properly consider these statements as factors relevant to their best interests. Therefore, the circuit court did not err in considering the children's desires, as expressed by the guardian, in determining the best interests of the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 28, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 25, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison